UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLFLOAT INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COLLINS CASH INC., et al.,<br><br>　　　　　　Defendants. | Case No. 20-cv-09325-EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I.　　TRIAL DATE & LENGTH OF TRIAL

The Court will hold a hearing at 1:00 p.m. on Wednesday, November 9, 2022, to discuss the completed jury questionnaires. At that hearing, the Court will discuss whether any potential jurors should be excused in advance of live voir dire on November 14, 2022. The Court intends to impose a vaccination requirement on jurors. The jurors will be socially distanced. All trial participants, including jurors and counsel, will be required to wear masks except for the testifying witness and questioner. The parties and their counsel shall certify they and their witnesses are either fully vaccinated or have tested negative on a rapid COVID test immediately before entering the courtroom. The hearing on November 9, 2022 shall be conducted via Zoom.

Jury selection is set for 8:30 a.m. on November 14, 2022. Counsel shall be present in the Courtroom at 8:00 a.m. to discuss any anticipated disputes. The Court strongly discourages side bars. The Court intends to seat eight jurors.

The jury trial is set for November 14, 15, 16, 18, and possibly 21. Trial shall last from 8:30 a.m. to 2:00 p.m. on each day. On all trial days, counsel shall be present in the Courtroom at 8:15 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.

1   Each session will last 90 minutes.  Breaks will be 15-20 minutes.  The plaintiff ("Plaintiff") shall
2   have nine hours and the defendants ("Defendants") shall have seven hours to present their cases,
3   respectively.  This includes opening statements, time on direct and cross-examination, and closing
4   arguments, but does not include jury voir dire.

## II.  ADVANCED NOTICE OF WITNESSES AND EXHIBITS

Each party shall provide two court days (48 hours) in advance for notice of witnesses and exhibits to be called each trial day.  The Court reserves the authority to exclude witness for non-compliance.

All objections to witnesses and exhibits must be filed with the Court at least one court day (24 hours) before the witness is scheduled to testify.  The Court will address objections at 8:00 a.m. on the following day.  All objections should be provided in writing and filed with the Court, and a courtesy copy should be given to chambers immediately.

Should a party fail to have enough witnesses to complete the trial day, the Court shall charge the surplus time remaining on that day against the party's total allotted time.  For instance, if a party concludes a witness's examination with an hour remaining in the day and is not prepared to call another witness, then the Court will subtract that hour from the party's allotted hours.

## III.  WITNESSES

A.  Plaintiff

Plaintiff has identified the following individuals as witnesses it may call:

(1) Evan Singer

(2) Abraham Cohen

(3) Stan Smith

(4) Melissa Pittaoulis

(5) Brian Greiner

B.  Defendants

Defendants have identified the following individuals as witnesses they may call:

(1) Evan Singer

(2) Abraham Cohen

1    (3) Mark Keegan

2    (4) Murray Steinman

## IV.    MOTIONS IN LIMINE

A.    Plaintiff

   1.    Motion *in Limine* No. 1 (Docket No. 86)

Plaintiff seeks to preclude all testimony and attorney argument that (1) Plaintiff could have, but did not, conduct its own market survey, and that (2) the jury should draw an adverse inference from the absence of such survey. (Docket No. 86 at 6.[1]) It argues that a consumer survey is not required to show likelihood of confusion between marks, particularly when it plans to offer evidence of actual confusion. (*Id.* at 4–5.) Courts have generally declined to draw adverse inference from the lack of survey evidence. (*Id.* at 5.)

Although the absence of a survey does not create a negative inference per se, Defendants argue that "the *contrast* of one party producing a survey and the other failing to do so" is not improper. (Docket No. 86 at 8 (emphasis in original).) Further, the exclusion of attorney argument—which is not "evidence" subject to Rule 403—would be overbroad. (*Id.* at 10.) It is not uncommon for an attorney to point out holes and omissions in the evidence put on by the opponent.

Thus, as explained at the hearing, the Court will allow attorney arguments as to absence of survey conducted by Plaintiff. The Court, however, will not allow evidence on that topic particularly where the intended cross of Plaintiff's rebuttal expert would exceed the proper scope of direct.

   2.    Motion *in Limine* No. 2 (Docket No. 87)

Plaintiff moves to preclude Defendants from introducing any testimony or attorney argument that the U.S. Patent and Trademark Office's ("PTO") publication of Defendants' mark after receiving Plaintiff's letter of protest suggests no likelihood of confusion between the parties' marks. Defendants argue that the evidence is relevant to willfulness, especially given Plaintiff's

---

[1] For the motions *in limine*, the cited page numbers refer to those of the PDF document.

3

1   assertion of willful infringement even after Defendants received the PTO's notice of publication.

2   As noted at the hearing, the Court will not permit evidence of the PTO's administrative
action to prove the merits of Defendants' position on the likelihood of confusion. The PTO's
action was not final, was predicated on a different standard (*du Pont* versus *Sleekcraft* factors),
and involved evidence different from that which will be presented to the jury at trial. The risk of
the jury placing undue weight on the PTO's action substantially outweighs the probative value of
this evidence. However, Defendants are correct that the 2020 PTO publication decision is relevant
to their state of mind on the issue of willfulness.

The risk, of the jury placing undue weight on the PTO action may be addressed by the two
options the Court suggested at the hearing. First, the Court can admit the evidence but give a
limiting jury instruction that the jury shall only consider the evidence for the purpose of evaluating
willfulness and not for the purpose of determine the risk of confusion. Second, the parties can
stipulate to no willful infringement after Defendants received the PTO's notice of publication.
This would moot the relevance of the 2020 action. The parties shall meet and confer and report
back to the Court regarding their decision by October 26, 2022.

3. Motion *in Limine* No. 3 (Docket No. 88)

Plaintiff seeks to preclude evidence and arguments to the jury relating to Defendants'
laches defense because it is an equitable affirmative defense irrelevant to any issue that the jury
will need to consider. (Docket No. 88 at 1–2.) Other affirmative defenses that may overlap with
laches, such as estoppel, waiver, and acquiescence, are all equitable in nature.

As stated at the hearing, the Court has decided to permit the jury to render an advisory
opinion on Defendants' laches defense because of overlapping issues with other claims and
defenses and overlapping testimony from witnesses. *See* Fed. R. Civ. P. 39(c) ("In an action not
triable of right by a jury, the court, on motion or on its own . . . may try any issue with an advisory
jury."); *Ormco Corp. v. Align Tech.*, 2009 U.S. Dist. LEXIS 140363, at *44 (C.D. Cal. May 12,
2009) (seeking advisory opinion from jury on equitable issues for which evidence may overlap
with legal claims). The Court thus denies this motion.

B. <u>Defendants</u>

    1.    Motion *in Limine* No. 1 (Docket No. 80)

At the hearing, the parties agreed that this motion is moot.

    2.    Motion *in Limine* No. 2 (Docket No. 81)

Defendants "seek to exclude any and all evidence or testimony at trial from plaintiff contradicting the testimony provided in the 30(b)(6) deposition of Plaintiff." (Docket No. 81 at 3 ("Evidence to Be Excluded").) The Court denies this motion. To the extent that any evidence is contrary to Plaintiff's witness's deposition testimony, Defendants may cross-examine and seek to impeach that witness on it. Inconsistency, however, is not a basis for total exclusion.

    3.    Motion *in Limine* No. 3 (Docket No. 82)

Under Federal Rule of Evidence 403, "Defendants seek to exclude any evidence or testimony regarding prior surveys or testimony by Defendants' designated expert Mark Keegan that was excluded." (Docket No. 82 at 3.) Defendants' expert, Mr. Keegan, conducted a survey to show that consumers are not likely to confuse the parties' subject trademarks. (*Id.*) Mr. Keegan has designed and executed over 1,000 consumer research studies over his two-decade long career. (Docket No. 82 at 4.) Among those studies, defendants anticipate Plaintiff to introduce "a self-serving sample of Mr. Keegan's prior unrelated surveys that were excluded to confuse and mislead the jury as to the one and only survey conducted in this case." (*Id.* at 3.) In particular, Plaintiff seeks to elicit testimony from Mr. Keegan and possibly documentary evidence of cases where judges have found his survey unreliable and subject to exclusion.

Plaintiff argues that "evidence of Mr. Keegan's import of the same errors in his present market survey after multiple courts had admonished Mr. Keegan for applying the same errors in surveys he conducted for other cases should be admissible because it: (1) is highly relevant to Mr. Keegan's credibility; (2) is not unfairly prejudicial; and (3) is highly probative of the flaws with Mark Keegan's survey methodology." (Docket No. 82 at 8.) In its *Daubert* motion, Plaintiff argued that Mr. Keegan's survey was unreliable in part because his similar surveys were very recently excluded in other cases. (*Id.* at 7 (citing *Kudos Inc. v. Kudoboard LLC*, No. 20-cv-01876-SI, 2021 WL 5415258, *12 (N.D. Cal. Nov. 20, 2021); *VonRosenberg v. Lawrence*, 413 F. Supp.

5

3d 437, 454–55 (D.S.C. 2019)).) Although the Court found "substantial bases for challenging the merits of Mr. Keegan's methodology," it ultimately denied the *Daubert* motion and held that Plaintiff's arguments "go to the weight of the evidence." (Docket No. 65 at 12.)

Plaintiff may vigorously cross-examine (and elicit rebuttal testimony against) Mr. Keegan on the merits of his survey, including on the kinds of bases other courts have considered. But eliciting evidence of how other judges in other cases have ruled raises grave FRE 403 concerns. No doubt, Mr. Keegan will attempt to distinguish those other cases; Plaintiffs will then try to demonstrate those decisions are not distinguishable. This will inevitably entail a deep dive into the weeds of each case, invoking the proverbial trail within a trial on a collateral point FRE 403 is designed to prevent. It also risks allowing the jury to place undue weight on ruling by another judge in another case, particularly inappropriate where, as here, this Court has already rejected a Daubert challenge. The motion to exclude is thus granted.

C. Stipulated Motion *in Limine* (Docket No. 89)

The parties stipulate (1) that neither party (including counsel and witnesses) shall refer to the Court's summary judgment and *Daubert* order or its substance and, (2) that Defendants' expert, Mr. Keegan, shall not opine that there is no likelihood of confusion. The Court grants the stipulation.

## V. EXHIBITS

The parties each submitted a list of bellwether objections to up to fifteen proposed exhibits. *See* Docket No. 100 ("Bellwether Objections"). The Court's rulings on these bellwether objections follow in the attached chart.

## VI. USE OF DISCOVERY RESPONSES

The parties have stated that they do not contemplate presenting discovery responses or deposition testimony to the jury. (Jt. PTC St. at 10.)

## VII. PRELIMINARY STATEMENT TO THE JURY AND JURY INSTRUCTIONS

The parties submitted joint jury instructions. The Court, having considered the parties comments, has made modifications. The parties shall meet and confer and attempt to resolve any difference they may have regarding the instructions and shall file comments or objections by

October 26, 2022.

## VIII. JURY VERDICT FORM

The parties have submitted a joint jury verdict form. The Court tentatively approves the verdict form with footnote 1 removed.

## IX. VOIR DIRE AND QUESTIONNAIRE

In addition to the Court's default voir dire questions, the parties submitted a joint list of case-specific questions to be included in the Court's electronic voir dire questionnaire. The Court has added those questions. The completed questionnaires should be available before the hearing on November 9, 2022.

## X. OTHER MATTERS

As noted above, all lawyers, clients and client representatives, and witnesses must be fully vaccinated and boosted or test negative before entering the courtroom. Additionally, anyone present in the courtroom who is not speaking must wear a mask.

**IT IS SO ORDERED**.

Dated: October 19, 2022

_____
EDWARD M. CHEN
United States District Judge